NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
CHELSEA NORELL (Cal. Bar No. 280831)
MIRI SONG (Cal. Bar No. 291140)
JEHAN PERNAS (Cal. Bar No. 320584)
Assistant United States Attorneys
International Narcotics, Money Laundering,
and Racketeering Section
      1400 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2624/2262/0319
      Facsimile: (213) 894-0142
      E-mail:    chelsea.norell@usdoj.gov
                 miri.song@usdoj.gov
                 jehan.pernas@usdoj.gov

Attorneys for Plaintiff
United States

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>JOSE LOZA, et al.,<br><br>              Defendants. | No. CR 16-390(A)-DSF-4<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT MICHAEL SALINAS<br><br>Sentencing Date: October 26, 2020<br>Sentencing Time: 8:30 a.m.<br>Location:      Courtroom of the<br>               Hon. Dale S.<br>               Fischer |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Chelsea Norell, MiRi Song, and Jehan Pernas, hereby files its Sentencing Position for defendant Michael Salinas ("defendant").

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or

argument that the Court may wish to consider at the time of sentencing.

The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: October 5, 2020          Respectfully submitted,

                                NICOLA T. HANNA
                                United States Attorney

                                BRANDON D. FOX
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____/s/_____
                                CHELSEA NORELL
                                MIRI SONG
                                JEHAN PERNAS
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On February 27, 2020, following a two-and-a-half week trial, the jury found defendant Michael Salinas ("defendant") guilty of (1) RICO conspiracy, in violation of 18 U.S.C. § 1962(d), where the jury found that drug distribution was a predicate offense and that it was reasonably foreseeable to defendant and within the scope of his agreement that the conspiracy would involve the distribution of more than 50 grams of actual methamphetamine and more than one kilogram of heroin; and (2) conspiracy to possess with intent to distribute, and to distribute, controlled substances, in violation of 18 U.S.C. § 846.

On May 18, 2020, the United States Probation Office filed its Presentence Investigation Report ("PSR"), in which it calculated a total offense level of 41 and determined that defendant falls within Criminal History Category IV, resulting in an advisory Guidelines range of 360 to 720 months' imprisonment.  The government concurs with the USPO's determination as to defendant's criminal history category, but objects to its calculation of the offense level.  As further set forth below, and incorporated herein by reference, the government submits that, in light of all of the evidence presented at trial, defendant should be subject to an additional two-level enhancement for use of violence under U.S.S.G. Section 2D1.1(b)(2). Therefore defendant's total offense level should be 43 (not 41), resulting in an advisory Guidelines range of life.

Nevertheless, for the reasons set forth below, the government recommends that the Court impose a sentence of 292 months' imprisonment, followed by a five-year period of supervised release

1  (consisting of five years on Count One and three years on Count 11,
2  to run concurrently), and a mandatory special assessment of $200.

3  **II.   SENTENCING GUIDELINES CALCULATION**

4      **A.   Offense Level Calculation**

5      The PSR calculated defendant's total offense level as 41 based
6  on the following calculation: a base offense level of 36, a two-level
7  enhancement for distributing drugs in prison, and another three-level
8  enhancement for defendant's supervisory role in criminal activity.
9  (PSR ¶¶ 109-126.)  The government agrees with the PSR's calculation
10  of the base offense level, and the enhancements for distributing
11  drugs in prison, and defendant's supervisory role.  However, the
12  government submits that the proper offense level is 43, because
13  defendant should be subject to an additional two level enhancement
14  for threats and use of violence.

15      1.   <u>Base Offense Level</u>

16      The USPO properly calculated defendant's base offense level at
17  36 because it was within the scope of defendant's agreement, and
18  reasonably foreseeable to him that the RICO conspiracy would involve
19  at least 1.5 kilograms of methamphetamine, and at least one kilogram
20  of heroin, resulting in a total converted drug weight of 31,000
21  kilograms, which corresponds to an offense level of 36.  (<u>See</u> PSR ¶¶
22  109-115.)  In fact, the case agent at trial testified that over the
23  course of this investigation, 1.5 kilograms of methamphetamine was
24  seized.

25      2.   <u>Distributing Drugs in Prison Enhancement</u>

26      The government concurs with the PSR that a two-level increase
27  should be applied because defendant was distributing drugs in prison,

28

2

as numerous wire calls played for the jury at trial demonstrated.
U.S.S.G. § 2D1.1(b)(4).  (PSR ¶ 116.)

- Gaitan: "Got a way to get in there?" Salinas: "Yeah." (**Ex. 45.**)

- Salinas: "I got a hold of something. I'ma have that shit coming this weekend . . . once this comes in . . . how are we going to work this um, money going to um, dad and all that?" (**Ex. 46.1**)

- Salinas: "He'll give me ounces, quarter pounds. All that." (**Ex. 46.2**).

- Salinas: "I got two ounces right now. . ." (**Ex. 47**).

- Salinas: "Six hundred an ounce." (**Ex. 47.**)

   3. <u>Supervisory Role Enhancement</u>

  The government also agrees with the PSR's inclusion of a supervisory role enhancement.  (PSR ¶¶ 118-121.)  Multiple times the defendant adopted a supervisory role in the CRO.  He leveraged his connections, and the power of David Gavaldon's name, to set up his prison smuggling operation – find drug suppliers, others willing to smuggle the drugs into prison, sell the drugs inside the prison, and then ultimately send profits to Jose Loza and David Gavaldon. Additionally, he was the one who raised the issue of Johnny Boy falsely claiming to be related to David Gavaldon, explaining that it was going to get "hectic," and he and others were going to "get loud" on Johnny Boy unless he had a legitimate connection to David Gavaldon.  (Ex. 56).  He took the issue all the way to Jose Loza, who was the "right channel" to tell him whether or not Johnny Boy actually had a legitimate claim.  (Ex. 54).  Defendant also volunteered for additional supervisory roles – he told David Gaitan

that he was willing to help organize younger CR gang members in order to keep them in line with the goals of the gang.  In light of all this evidence which was presented at trial, defendant's supervisory role enhancement is appropriate.

### 4.   Use of Violence Enhancement

In addition, the government believes that the threats of violence/violence enhancement is appropriate in defendant's case.

First, as previously mentioned, Defendant made a credible threat to use violence against Johnny Boy.  Johnny Boy was in effect, stealing from David Gavaldon by falsely claiming to work for him. Mr. Enriquez testified about the power a Mexican Mafia member's name has, not just for protection, but also for taxation.  This issue was so serious, that multiple times defendant raised it to David Gaitan, and ultimately to Jose Loza. See Ex. 54: Defendant: This fool Johnny Boy . . . I told him to keep Pops' name out of his mouth, right?"; Ex. 56.1: Defendant: "So, there's something . . .there's . . . it's, it's gonna get hectic you know? . . . Like these fools are gonna, they're gonna, they're gonna get loud on him fool."

In addition to this, a cooperator also testified at trial that defendant said he assaulted another inmate with a weapon, because that inmate didn't recognize Jose Loza's ability to tax at Calipatria. This is in line with defendant's role in the Canta Ranas, and he took his duties seriously.  He was an enforcer, making sure no one was falsely claiming to work for David Gavaldon, and when someone failed to respect Jose Loza's authority, he took action and assaulted them. Defendant should receive a two level use of violence sentence enhancement.

4

**B.   Criminal History Calculation**

The PSR determined that defendant has a total of seven criminal history points and falls within Criminal History category IV.  (PSR ¶ 137).  The government agrees.

**III. GOVERNMENT'S RECOMMENDATION AND ANALYSIS OF SECTION 3553(A) FACTORS**

**A.   The Seriousness of the Offenses**

The nature and circumstances of the offense warrant the significant custodial sentence of 292 months' recommended by the government.

Defendant was an enforcer in the CRO, and he was committed to the CRO's main money making enterprise – drug trafficking – along with assault and extortion.  On various wiretap calls, defendant regularly reported on his "work" to David Gaitan, Jose Loza's lieutenant.  His work included setting up a prison smuggling operation, making sure profits were getting funneled to Jose Loza and David Gavaldon, expanding the reach of the CRO, and making sure nobody was illegitimately profiting off David Gavaldon's name.  He was an essential part of a dangerous criminal enterprise, a gang member, who along with others like him, enhanced the CRO's reputation, enforced its rules, and secured its territory through threats and violence.

**B.   Defendant's History and Characteristics**

Defendant's criminal history shows that there is no reasonable hope of rehabilitation.  Defendant's criminal history began when he was young, at age 16 with theft, and escalated quickly and violently. PSR ¶¶ 130-131.  At the age of 17, defendant approached a family that was having a party in their front yard, and he struck a victim in the

1    head with a baton, saying the victim had "fucked up." PSR ¶ 132. At

2    the age of 19, defendant was convicted of being a felon in possession

3    of a firearm. PSR ¶ 133. He served only a short time in jail before

4    being released, and while still 19, committed murder and attempted

5    murder. PSR ¶ 134. The jury found that the murder and attempted

6    murder were committed in association with a street gang, in order to

7    promote the street gang's criminal conduct. PSR ¶ 134.

8         The facts of this crime were simple. Defendant, "working" along

9    with another Canta Ranas gang member – Michael Jaimez – approached

10   the victim, while he was still in his car in a 7-11 parking lot, and

11   shot him point blank in the head. Id. As the victim's companions

12   fled, defendant fired multiple rounds at them as well. Id.

13   Defendant was sentenced to 77 years to life for this crime. Id.

14   Defendant said that he considers prison his home, and has no vision

15   of ever being released. PSR ¶ 156.

16        In mitigation, defendant appears to have gotten involved very

17   early on in his life with a street gang, his mother was a drug addict

18   when she was younger, and his father was absent from home because of

19   his Army Service. When he was home he was diagnosed with PTSD, and he

20   drank and used drugs. Additionally, defendant's brother was only 17

21   when he was shot and killed on mother's day.

22        **C.   Custodial Term**

23        Finally, the custodial term requested by the government is

24   significant but no more than necessary to achieve the purposes of the

25   statutory regime. A sentence of 292 months – which reflects a six-

26   level variance from the Guidelines as the government calculates them

27   – is a serious custodial sentence, that reflects defendant's actions

28   in this case, his extended participation in the CRO as it relates to

drug trafficking, the need to protect the public, and his utter lack of respect for the law.  It also balances these factors against mitigating ones – the neighborhood defendant grew up in, a street gang that defendant became involved with early on, the fact that both defendant's parents appeared to be absent and dealing with addiction, and personal tragedies that affected him and his family while defendant was still young.

Based on all the factors enumerated above, the United States believes that a 292 months' sentence is sufficient but not greater than necessary to comply with the purposes set forth in Sections 3553(a)(1) and (a)(2).

**IV.   CONCLUSION**

For the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: 292 months of imprisonment, followed by a five-year period of supervised release (consisting of five years on Count One and three years on Count 11, to run concurrently), and a mandatory special assessment of $200.  No property designated for forfeiture has been attributed to defendant at this time.