# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JOSE LOZA, et.al.,<br>Defendants. | CR 16-00390(A)-DSF-39<br><br>Order DENYING Defendant's<br>Motion for Judgment of Acquittal<br>or, in the Alternative, a New<br>Trial (Dkt. 4003) |

After a ten-day jury trial, Defendant Michael Salinas was found guilty on two counts: racketeering conspiracy and drug trafficking conspiracy.  Dkt. 3909 (Verdict).  He moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29, or in the alternative, for a new trial under Rule 33.  For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

Defendant was charged with racketeering conspiracy and drug trafficking conspiracy based on his role in the Canta Ranas Organization (CRO).  Members of the CRO sell drugs and extort "taxes" from other drug dealers, remitting a portion of the proceeds to their leader David Gavaldon.  The evidence at trial showed that Defendant had numerous CRO-related tattoos showing his membership in the organization.  He also spoke over the phone to other CRO members, discussing selling drugs in the prison and paying David Gavaldon from the proceeds.  The evidence also included recorded conversations about individuals who were falsely claiming to work for David Gavaldon and Defendant's offers to assault those individuals, including evidence

involving one such assault.  Based on this and other evidence, the jury convicted Defendant on both counts.

## II. LEGAL STANDARD

### A.    Rule 29

The Court must "enter a judgment of acquittal if the Government fails to present sufficient evidence to sustain a conviction." United States v. Miller, 953 F.3d 1095, 1108 (9th Cir. 2020) (quoting United States v. Dearing, 504 F.3d 897, 900 (9th Cir. 2007)).  Evidence is sufficient if, "'view[ed] . . . in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (alterations in original).  "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case." United States v. Nevils, 598 F.3d 1158, 1167 (9th Cir. 2010).  "Conflicting evidence is to be resolved in favor of the jury verdict," United States v. Corona-Verbera, 509 F.3d 1105, 1117 (9th Cir. 2007), and "[t]he hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010).

### B.    Rule 33

The Court may set aside the jury verdict and order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A motion for a new trial should be granted only "in exceptional circumstances in which the evidence weighs heavily against the verdict." United States v. Del Toro-Barboza, 673 F.3d 1136, 1153 (9th Cir. 2012) (quoting United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).  "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000).  "[A] decision to grant or deny a new trial is within the sound discretion of the district court." United States v. Steel, 759 F.2d 706, 713 (9th Cir. 1985).

## III. DISCUSSION

**A.      Evidence related to the 2016 Stabbing Incident**

**1.      Inclusion of Evidence**

Defendant contends that the Court erred in permitting the government to introduce testimony related to a 2016 stabbing incident in which Defendant purportedly stabbed a fellow inmate to enforce the authority of the CRO because such testimony was "character evidence based on hearsay." Mot. at 8. The Court previously determined that this evidence "is direct evidence of [Defendant's] connection to, and role in, the conspiracy" and was therefore admissible. Dkt. 3803 (2/4/20 MIL Order) at 2-3. Defendant contends that a late-disclosed "non-testifying cooperator provided an alternative explanation for Defendant committing the stabbing in 2016" that was evidence "impeaching of the testifying cooperator's statements and, in fact, undermined the evidentiary basis for introduction of the testifying cooperator's statements in the first instance." Mot. at 9-10. However, as the Court previously concluded, "potentially conflicting evidence is not a basis to exclude the 2016 Incident." 2/4/20 MIL Order at 3. To the extent Defendant's position is based on the opinion that the witness who testified as to Defendant's stated motive for committing the assault was lying, Defendant had the opportunity to cross-examine him. See Dkt. 4020 (2/20/20 AM Tr.) at 137-147; Dkt. 4014 (2/20/20 PM Tr.) at 152-173. Therefore, it is not correct that the witness's credibility "could not have been properly considered by the jury as they were never presented with the non-testifying cooperator's alternative, and exculpatory, explanation for the incident." Dkt. 4042 (Reply) at 3. Defendant otherwise repeats the same arguments here that the Court considered – and rejected – when it ruled on the initial motion *in limine* and the two renewed motions *in limine*. Nothing has changed to warrant reconsideration of those Orders.

In addition, Defendant fails to show that the admission of this evidence prejudiced him enough to warrant a judgment of acquittal or

new trial.  The government produced ample evidence to support the
jury's verdict, including Defendant's tattoos and his conversations with
other CRO members regarding smuggling drugs into the prison and
funneling the proceeds to David Gavaldon.  Defendant's argument that
his "membership of the charged RICO organization consisted almost
entirely of speculation and inference," Mot. at 8; see also Reply at 2
("Other than this prison fight, the evidence against defendant was
solely phone conversations regarding his purported ability to sell drugs
in prison, (uncorroborated by evidence to verify such sales) and
whether a fellow inmate had the blessings of a gang higher-up"),
ignores the government's evidence and is therefore unconvincing.

### 2.  **Brady** Challenge

The Court also rejects Defendant's related contention that the
late disclosure of the non-testifying cooperator was a Brady violation.
"To receive a new trial because of a *Brady* violation, a defendant must
show: '(1) the evidence was exculpatory or impeaching; (2) it should
have been, but was not produced; and (3) the suppressed evidence was
material to his guilt or punishment.'"  United States v. Houston, 648
F.3d 806, 813 (9th Cir. 2011) (quoting United States v. Antonakeas, 255
F.3d 714, 725 (9th Cir. 2001)).  "[T]here is no *Brady* violation so long as
the exculpatory or impeaching evidence is disclosed at a time when it
still has value."  Id.  The non-testifying cooperator was disclosed to
Defendant on January 30, 2020, nearly two weeks before trial began.
Although an interview between the cooperator and Defense counsel was
not scheduled until February 16, 2020, after the trial had begun,
Defendant had not begun presenting his case and the testifying
cooperator had not yet been called to the witness stand.  Therefore,
Defendant had the opportunity to cross-examine the testifying witness
after the disclosure.  To the extent the non-testifying cooperator's
potential testimony ever held value, that value still existed at the time
the cooperator was disclosed.

In any event, the non-testifying cooperator's potential testimony
was not material under Brady because there was not "a reasonable
probability that the result of the proceeding would have been different

had it been disclosed to the defense." Id. (quoting Antonakeas, 255 F.3d at 725). Defense counsel attempted to interview the cooperator, but the cooperator refused to answer any questions, as he did with counsel for another co-defendant. Further, there was no indication that the cooperator's testimony would be admissible. See United States v. Kennedy, 890 F.2d 1056, 1059 (9th Cir. 1989) ("To be material under *Brady,* undisclosed information or evidence acquired through that information must be admissible."). The summary prepared by the government stated only that the non-testifying cooperator "heard" that Defendant stabbed the other inmate without permission, that his "opinion" was that there would have been two aggressors if the attack was sanctioned, and that he "believed" Defendant committed the assault to get transferred to another prison. Defendant contends that "[h]ad the Government provided the non-testifying cooperator's statements in a timely fashion rather than waiting 40 days until the eve of trial to make disclosure, substantially more time would have existed to attempt to obtain a more detailed statement from the non-testifying cooperator." Reply at 3. But the suggestion that an additional month with the interview summary would have produced some admissible, exculpatory evidence is pure speculation and not grounds for a new trial.

### 3.   Exclusion of Evidence

Defendant contends it was error for the Court not to permit "the non-testifying cooperator's statements . . . through examination of the case agent who was present at the interview." Mot. at 11. As the Court previously noted, the non-testifying cooperator's statements were inadmissible hearsay and speculation. Again, nothing has changed to warrant reconsideration of that opinion.

Defendant's request for a judgment of acquittal or new trial based on the admission of the 2016 stabbing incident and the exclusion of the cooperator's statement is DENIED.

**B.    Coded Language Testimony**

Defendant next contends that the Court erred in admitting testimony from three expert witnesses on coded language, Rene Enriquez, Officer Robert Rodriguez, and Special Agent Steve Paris – particularly Paris, who provided only "generalized notes regarding his anticipated testimony" just prior to testifying.  Mot. at 12.  But the Court addressed the government's disclosure of Paris's testimony on coded language prior to trial.  See Dkt. 3717 (1/7/20 MIL Order) at 8-9.  Additionally, the Court has previously concluded that the disclosures for all three experts were sufficient, particularly considering that the government continued to make disclosures up to trial.  That the government made an additional disclosure during trial relating to Paris's testimony, which was not substantially different from the pretrial disclosure, does not warrant reconsideration of that decision.

And Defendant does not identify any particular testimony that was improper or explain why any testimony was improper.  The Court previously held that coded language testimony from these three experts could be helpful to the jury because certain phrases "will not have the same meaning for a juror as it does for a gang member."  1/7/20 MIL Order at 10.  This turned out to be true with phrases such as "black girl Moesha" and "shining light."  The coded language testimony was proper expert testimony.

Additionally, Defendant was not prejudiced by the coded language testimony.  Although the testimony as to certain coded words was likely helpful to the jury, that does not mean that the phone calls were otherwise meaningless.  Substantial portions of the phone conversations were understandable to a lay person.  See Opp'n at 1-3 (collecting evidence).  The Court disagrees with Defendant's contention that "[h]ad the coded language testimony been properly excluded, it is doubtful Defendant could have been convicted on either count," Mot. at 12.  Even without the coded language testimony, the telephone calls themselves, along with the testimony of other witnesses, provided ample evidence of Defendant's criminal activities.

Defendant's request for a judgment of acquittal or new trial based on the admission of coded language testimony is DENIED.

## C.     Testimony of Rene Enriquez

Defendant contends that the Court erred in permitting the government to call Rene Enriquez as both an expert and percipient witness.  Mot. at 12-13.  But the government clearly delineated Enriquez's lay testimony and expert testimony, see Dkt. 3878 (2/19/2020 Tr.) at 9:6-8; 18:3-4, and the Court gave a jury instruction regarding dual role testimony, Dkt. 3904, Instruction No. 17. Defendant also contends that Enriquez opined on "critical facts necessary to establish the elements of Count One; namely, the existence of the Mexican mafia as a RICO organization and its membership and structure."  Mot. at 13.  First, as the government notes, the RICO organization here was the CRO and not the Mexican Mafia.  Opp'n at 15.  Additionally, the Court previously held that Enriquez was permitted to "distill[] and synthesiz[e] information to form an expert opinion."  1/7/20 MIL Order at 13.  That is what he did. In other words, because Enriquez "did not impart this information for its own sake, but to explain the basis for his expert opinion," the testimony is admissible.  See United States v. Vera, 770 F.3d 1232, 1239 (9th Cir. 2014).

Second, Defendant contends that co-defendant Sylvia Olivas was particularly prejudiced by Enriquez because he personally ordered "the murder of [Olivas's] sister-in-law."  Mot. at 13.  The Court previously determined that "[w]hile it may be true that permitting Enriquez to testify will be uncomfortable, and even painful, to Defendant and her family members, it is not government misconduct"; "[i]t does not deprive Defendant of her due process right to a fair trial and it does not impugn judicial integrity."  Dkt. 3657 (12/3/19 MIL Order).  Defendant repeats the same arguments here that the Court considered – and rejected – when it ruled on the motion *in limine*.  Nothing has changed to warrant reconsideration of that Order.

Defendant's request for a judgment of acquittal or new trial based on the admission of Enriquez's testimony is DENIED.

## IV. CONCLUSION

Defendant's motion for a judgment of acquittal or new trial is DENIED.

IT IS SO ORDERED.

Date: October 19, 2021

Dale S. Fischer
United States District Judge